[No. 3827.—Decided April 26, 1901.]

CHARLES ENGSTROM et al., Respondents, v. CYRUS K. MERRIAM, Appellant.

DAMAGES — FAILURE OF LESSOR TO GIVE POSSESSION OF LEASED PREMISES.

Where a lessor fails to give possession of premises leased for the purpose of engaging in a new business, the damages recoverable by the lessee are measured by the difference between the actual rental value and the rent reserved.

VERDICT — GENERAL CONTROLLED BY SPECIAL FINDINGS.

Where the special verdict of the jury fixes the various items of plaintiff's damages, both general and special, with the excep-

tion of one item of special damages alleged in the complaint, and the aggregate of the various items found in the special verdict, plus the amount of the item alleged in the complaint but omitted from the special verdict, is less than the general verdict, the general verdict must yield to the special, with the addition thereto of the omitted item, under the terms of Bal. Code, § 5022, which provides that when a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly.

Appeal from Superior Court, Spokane County.—Hon. THOMAS H. BRENTS, Judge. Reversed.

*William Merriam* and *W. J. Thayer* (*Odell D. Thompkins,* of counsel), for appellant.

*Lewis & Lewis,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—This action was brought by respondents against appellant to recover damages for breach of a written contract of lease. The cause was tried by the court and a jury. A special verdict, aggregating $365, and also a general verdict for the sum of $826.25 were returned in favor of the respondents. Judgment was entered for the sum of $826.25, in accordance with the general verdict. From this judgment appeal is taken. The statement of facts has been stricken by the lower court, so that all the record now before this court for consideration consists of the pleadings and the two verdicts above mentioned. In considering the question involved in this appeal it is not necessary to notice the answer, or reply, because the complaint and verdicts must determine the question. The allegations of this complaint, in brief, are as follows: Paragraph 1 sets out the lease by which respondents agreed to lease to appellant a certain building in Spokane for one year from October 1, 1898, to October 1, 1899,

at the monthly rental of $70; paragraph 2, that respondents on October 1, 1898, tendered the first month's rent; and paragraphs 3 and 4 allege compliance on the part of respondents, and a breach of the contract on the part of the appellant.    Paragraph 5 alleges damages in the sum of $2,400 "by the loss of the said lease and the use of the premises therein described during the time thereof."    Paragraph 6 alleges damages in the sum of $71, expenses incurred in making two trips for the express purpose of taking possession of the premises described in the lease. Paragraph 7 alleges damages in the sum of $75 for loss of time in securing necessary stock with which to utilize the said premises.    Paragraph 8, that respondents purchased fixtures and stock amounting to $850, which they will be obliged to sell at a loss of $550, and that they have been obliged to store the said stock at a cost of $2.50 per month.    Paragraph 9, that respondents *"have been damaged in all, as aforesaid,* in the sum of $3,098.50, and the further sum of $2.50 per month for continuation of storage."    Then follows the prayer in accordance with the allegations.    The special verdict of the jury, omitting the title of the cause, is as follows:

"1.    How much damage did plaintiffs sustain by depreciation of cigars, whiskey, wines, fixtures, and other stock and furniture?    Answer: None.

2.    How much loss did plaintiffs sustain on account of traveling expenses?    Answer: Thirty-five dollars ($35).

3.    How much damage did plaintiffs sustain by loss of time in negotiating for other premises?    Answer: Thirty dollars ($30).

4.    What was the reasonable rental value of the premises in question on October 1, 1898, allowing them to be used for saloon purposes and all other purposes for which they were adapted?    Answer: Ninety-five dollars (95) per month.

5.    How much damage did plaintiffs sustain as the dif-

ference between the rental value of said premises and the amount of rent they were to pay defendant therefor? Answer: Three hundred dollars ($300).

6.   Could the plaintiffs by the exercise of reasonable care, have prevented any loss to their stock of goods and fixtures by depreciation? Answer: Yes.

(Signed)                    T. M. Foster, Foreman."

The general verdict is as follows:

"We, the jury in the case of Charles Engstrom and August Anderson, plaintiffs, against Cyrus K. Merriam, defendant, find for the plaintiffs, and assess their damages at the sum of eight hundred twenty-six and 25-100 dollars ($826.25).

Spokane, Washington, October 31, 1899.

T. M. Foster, Foreman."

No question is presented in this case concerning the items of special damages, and it is conceded, therefore, for the purposes of this case, that these items are proper elements of damage. Mr. Sedgwick, in his work on Damages (8th ed.), at § 185, lays down the general rule for the measurement of damages in cases of this kind as follows:

"Where a lessor fails to give possession of the leased premises, the measure of damages is the difference between the actual rental value and the rent reserved. The rule is the same, whether the leased property is a farm, a dwelling house, or hotel, or business premises. If, however, the premises were necessary to the plaintiff for carrying on an established business, and that fact were known to the defendant at the time the lease was made, the plaintiff might on principles elsewhere discussed recover further damages. The measure of damages would be the difference between the rent and the value for the plaintiff's business, which would involve an allowance of profits. If the business were a new one, since there could be no basis on which to estimate profits, the plaintiff must be content to recover according to the general rule."

See, also, 3 Sedgwick, Damages (8th ed.), § 1022; Suth-

erland, Damages (2d ed), §§ 864-867; *Morgan v. Bell,* 3 Wash. 554 (28 Pac. 925, 16 L. R. A. 614).

There is no allegation in the pleadings that these premises were necessary to plaintiffs for carrying on an *established business,* or that the purpose of the lease was known to defendant at the time the lease was made. On the contrary, it inferentially appears from the complaint that the plaintiffs were about to engage in a new business, because it became necessary to purchase a stock of goods and fixtures with which to occupy the premises, and damages are claimed both for time lost in so doing and also for depreciation of the stock purchased. Hence the general rule must prevail with reference to the measure of damages for loss of the use of the premises.

Having, then, the rule of damages as the same must apply in this case, we now revert to the principal question involved in the case, which is, Did the court err in entering judgment for the amount of the general verdict? By § 5022, Bal. Code, it is provided:

"When a special finding of facts shall be inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly."

It is necessary to consider the special verdict in order to determine whether all the elements of damage are passed upon by the jury, and to what extent the general verdict is inconsistent therewith, if at all. It will be noticed that the damages alleged in the complaint are: (1) general damages by reason of the loss of the use of the premises; (2) special damages for expenses of a trip to take possession of the premises; (3) special damages for loss of time in purchasing stock, with which to utilize the said premises; (4) special damages caused by depreciation in the stock purchased; (5) storage charges at $2.50 per month. The first question presented to the

jury, viz: "How much damage did plaintiffs sustain by depreciation of cigars, whiskey, wines, fixtures, and other furniture?" clearly refers to the fourth item of damages as alleged in paragraph 8 of the complaint, omitting the cost of storage, and the answer is, "None." The second question, "How much loss did plaintiffs sustain on account of traveling expenses?" refers to the second element of damages as alleged in paragraph 6 of the complaint; and the answer is "$35." The third question is, "How much damage did plaintiffs sustain by loss of time in negotiating for other premises?" Answer: "$30." This question and answer do not clearly appear to be pertinent to any of the elements of damage alleged. It possibly was intended to refer to damages alleged for loss of time in securing stock with which to utilize the premises, as alleged in paragraph 7 as the third element of damages. It probably was intended to cover the storage charges for one year at $2.50 per month, as alleged in paragraphs 8 and 9, as the fifth element of damages. Whatever the truth may be, it referred to one or the other of these elements of damage, otherwise it was entirely improper. We assume that it referred to the item most favorable to respondents, viz., the storage, being the fifth element of damage. The fourth and fifth questions, viz.: "What was the reasonable rental value of the premises in question on October 1, 1898, allowing them to be used for saloon purposes and all other purposes for which they were adapted?" Answer: "$95 per month;" and "How much damage did plaintiffs sustain as the difference between the rental value of the said premises and the amount of rent they were to pay defendant therefor?" Answer: "$300,"—referred to the first element of damage as alleged in paragraph 5, and covered the question of general damages. It is therefore readily seen that the special ver-

dict, while not in the order of the allegations of the complaint, covered each of the general and special damages, with the single exception of the item of expenses for loss of time after the making of the lease in purchasing fixtures and goods with which to utilize the said premises. The complaint alleges $75 for this item. Taking the construction of these special verdicts most favorable for the respondents, the general verdict is in excess of the special verdict, and the only item not taken into account thereby,. viz., $75, as alleged in the complaint, by $386.25.

We conclude, therefore, that the court erred in entering judgment upon the general verdict, for the reason that the same cannot be harmonized with the findings of the special verdict and the allegations of the complaint, and that the special verdict must control the general verdict as to all questions passed upon by the special verdict. By giving judgment for the total amount of the special verdict and $75 additional, the amount alleged for special damages in the seventh paragraph of the complaint, the court could not give judgment for more than the sum of $440. The cause will therefore be reversed, with instructions to the lower court to grant a new trial unless respondents, within sixty days, remit the sum of $386.25 from the general verdict. Appellant to recover costs on this appeal.

REAVIS, C. J., and FULLERTON and ANDERS, JJ., concur.