# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|                          |   |                          |
|--------------------------|---|--------------------------|
| STATE OF WASHINGTON,     | ) | No. 68068-4-I            |
|                          | ) |                          |
| Respondent,              | ) | DIVISION ONE             |
|                          | ) |                          |
| v.                       | ) |                          |
|                          | ) |                          |
| P.E.T. (DOB: 03/29/93),  | ) | PUBLISHED                |
|                          | ) |                          |
| Appellant.               | ) | FILED: April 29, 2013    |
|                          | ) |                          |

Cox, J. — Parish Tate appeals the juvenile court's adjudication and

disposition on the charge of second degree robbery. At issue is whether the

court improperly placed on him the burden of proving his incompetence at a

competency hearing under former RCW 10.77.060 (2004). This statute is silent

as to who bears the burden of proof at an initial competency hearing. But there

is a common law presumption that one found incompetent remains so until

adjudicated otherwise.[1] That presumption is applicable here.

In this case, Tate was found incompetent in a prior proceeding and the

criminal charges there, which were unrelated to the charge in this case, were

dismissed. Accordingly, the presumption of incompetence remained until the

---

[1] State v. Coley, 171 Wn. App. 177, 187, 286 P.3d 712, petition for review filed, No. 88111-1 (Wash. Nov. 26, 2012).

State rebutted that presumption in this case. Under the circumstances of this case, the trial court erroneously placed the burden of proving incompetence on Tate at his competency hearing. We reverse and remand with instructions.

The relevant facts are undisputed. In 2009, Tate was found incompetent and several charges against him were dismissed based on that finding.[2] That proceeding and those charges were unrelated to this case.

On December 15, 2010, slightly over one year after the prior dismissal, the State charged Tate with second degree robbery after an incident on a bus.

Because the juvenile court had reason to doubt Tate's competency, the court, pursuant to former RCW 10.77.060 (2004), ordered that Tate be admitted for evaluation at Western State Hospital to determine whether he was competent to stand trial.[3] Two qualified professionals examined him.[4] One of these professionals, Western State Hospital Staff Psychologist Dr. Ray Hendrickson, authored a Forensic Mental Health Evaluation for Tate on April 7, 2011.[5]

Tate contested the findings in the report, and the court held a competency hearing.

At the hearing, the State presented testimony from Dr. Hendrickson, who testified that Tate (1) "[did] not currently suffer from a mental illness," (2)

---

[2] Findings of Fact and Conclusions of Law Regarding Defendant's Competency, Clerk's Papers at 16.

[3] Id. 16.

[4] Id.

[5] Id.

2

"possesse[d] the ability to have a factual and rational understanding of the charges and court proceedings he faces," and (3) "possesse[d] the capacity to communicate with his attorney to assist in his defense."[6] Tate's counsel cross-examined the doctor regarding his report and findings.

During that hearing, the issue of which party bore the burden of proof arose. The court considered case authority and arguments of the parties on this question. Thereafter, the court concluded that Tate had to prove by a preponderance of the evidence that he was incompetent to stand trial. Based on this conclusion and the evidence at the hearing, the court found that Tate had "not proven by a preponderance of the evidence that he remains incompetent."[7]

The court proceeded to the fact-finding hearing and found Tate guilty of the crime charged. Findings, conclusions, and an order consistent with this determination followed.

Tate appeals.

## COMPETENCY

Tate argues that the trial court denied him due process by placing on him the burden of proving his incompetence.[8] We hold that the trial court improperly placed on him the burden of proving his incompetence under the circumstances of this case.

---

[6] Id. at 16.

[7] Order on Motion Re Competency Hearing, Clerk's Papers at 13.

[8] Brief of Appellant at 3-8.

"[T]he Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial."[9] Due process also requires that the State's procedures be adequate to protect this right.[10] But the United States Supreme Court has also held that once a State provides a defendant access to procedures for making a competency evaluation, due process does not require the State to assume the burden of proving that a defendant is competent to stand trial.[11]

In Washington, there is additional statutory protection.[12] RCW 10.77.050 provides that "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues."

A person is defined as incompetent under the statute if he or she "lacks the capacity to understand the nature of the proceedings against him or her or to assist in his or her own defense as a result of mental disease or defect."[13]

---

[9] Medina v. California, 505 U.S. 437, 439, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992) (citing Drope v. Missouri, 420 U.S. 162, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); Pate v. Robinson, 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966)).

[10] Pate, 383 U.S. at 378.

[11] Medina, 505 U.S. at 449.

[12] In re Fleming, 142 Wn.2d 853, 862, 16 P.3d 610 (2001) (citing RCW 10.77.050).

[13] Compare former RCW 10.77.010(15) (2010), with RCW 10.77.010(15) (using identical language to define "incompetency").

We review a trial court's determination of competency for abuse of discretion.[14] Whether the State or a defendant bears the burden of proof at a competency hearing is a question of law that we review de novo.[15]

*Burden of Proof*

The parties argue that Washington law either places the burden of proof entirely on the State or on the defendant alleging incompetence. But neither argument is persuasive.

Chapter 10.77 RCW sets out "the procedures for the evaluation and treatment of those alleged to be incompetent to stand trial."[16] And this chapter is "generally applicable to juvenile competency determinations."[17] Former RCW 10.77.060 (2004) provides when and how a criminal defendant's competency should be evaluated. Former RCW 10.77.084 (2007) provides the procedures for staying the proceedings and restoring competency. But neither of these statutes assigns to either party the burden of proof at a defendant's competency hearing.[18]

Division Three of this court recently stated with respect to these statutes that "[i]t is a bit murky as to who bears the burden of proof" at a defendant's

---

[14] State v. Benn, 120 Wn.2d 631, 662, 845 P.2d 289 (1993).

[15] See Coley, 171 Wn. App. at 186.

[16] State v. E.C., 83 Wn. App. 523, 529, 922 P.2d 152 (1996).

[17] Id. at 530.

[18] See former 10.77.060 (2004); former RCW 10.77.084 (2007); see also former RCW 10.77.086 (2007) (providing the commitment procedures for a felony charge).

competency hearing.[19] Notwithstanding this uncertainty under the statutes, in State v. Coley, Division Three addressed the burden of proof issue based on the common law presumption of incompetence.[20] There, the trial court decided to place the burden of proving Coley's incompetence on him at his competency hearing.[21] This decision was based on the trial court's erroneous belief that the most recent previous court order found Coley competent.[22]

On review, a majority of a divided court concluded that this decision was incorrect.[23] The majority explained that "[t]here is a presumption that an incompetent person remains incompetent until adjudicated otherwise."[24] Since the most recent previous court order found that Coley was incompetent, the presumption of incompetence should have been in effect, and the burden of proof should have "shifted to the State to prove that [Coley] was competent."[25]

We agree with Division Three's rationale in Coley. In the absence of any statement in the statutes of who bears the burden of proof at a competency hearing, it is logical to apply the common law presumption to the statutes to fill

---

[19] Coley, 171 Wn. App. at 187.

[20] 171 Wn. App. 177, 187, 286 P.3d 712 (2012).

[21] Id. at 184.

[22] Id.

[23] Id. at 188.

[24] Id. at 187 (citing State v. Platt, 143 Wn.2d 242, 251 n.4, 19 P.3d 412 (2001); In re Estate of Miller, 10 Wn.2d 258, 268, 116 P.2d 526 (1941); Criez v. Sunset Motor Co., 123 Wash. 604, 606, 213 P. 7 (1923)).

[25] Id. at 188.

this gap. Doing so here, we conclude that the prior finding that Tate was incompetent, leading to the dismissal of the charges against him, raised the common law presumption that he remained incompetent. Thus, it was the burden of the State at the initial competency hearing in this case to rebut that presumption. But the trial court determined, as its order reflects, that Tate failed to prove "by a preponderance of the evidence that he remains incompetent."[26] This was error.

This approach makes sense, as The Washington Practice treatise explains. The treatise discusses the general process when a criminal defendant's competency is at issue:

> When the issue of the defendant's competency to stand trial is raised, the issue is determined by the court, and if neither the prosecutor nor defense counsel contests the findings contained in the report, the judge may make his determination on the basis of the report. However, if the report of the court-appointed experts is contested, the court must hold a hearing.
>
> An accused has the burden of showing that he or she is incompetent to stand trial by a preponderance of the evidence. This proof requirement is based upon the presumption of sanity.[27]

But the treatise also explains that a defendant may *not* bear the burden of proof when a court has previously adjudicated that the defendant was incompetent:

> Commitments on previous occasions to an institution for mental illness are not determinative of present competency to stand trial for a criminal offense. A person who has been previously

---

[26] Order on Motion Re Competency Hearing, Clerk's Papers at 13.

[27] 12 ROYCE A. FERGUSON, JR., WASHINGTON PRACTICE: CRIMINAL PRACTICE & PROCEDURE § 907 (3d ed. 2012).

adjudicated to be incompetent, however, is presumed to remain in that condition until a proper hearing is held and he is declared mentally competent. The presumption is rebuttable.[28]

Thus, a common law presumption of incompetence arises when a court has previously determined that the accused was incompetent and there is no intervening court determination otherwise.[29] The party who wants to overcome this presumption has the burden of proof at the competency hearing.[30]

This latter situation was the case here. A court previously determined that Tate was incompetent in 2009. That determination created a common law rebuttable presumption that he remained so at the time of the initial competency hearing in this case in 2011. The trial court incorrectly placed the burden of proof on Tate to prove that he remained incompetent. The burden should have been placed on the State to rebut the presumption of incompetency that arose from the prior adjudication of incompetency.

At the initial competency hearing in this case, the juvenile court relied on State v. Harris when it erroneously ruled that the burden of proof was on Tate.[31] But Harris does not control this case.

---

[28] Id. at § 904.

[29] Id.

[30] Id.

[31] Report of Proceedings (June 21, 2011) at 103-04 (citing State v. Harris, 114 Wn.2d 419, 789 P.2d 60 (1990)).

There, Harris was convicted of aggravated murder and sentenced to death.[32] Our supreme court addressed several issues in that capital case, including who bears the burden of showing whether the petitioner is competent to be **executed**.[33] The supreme court adopted a rule that "places the burden on the petitioners to make a substantial showing that they are presently insane for purposes of execution."[34]

Harris is distinguishable from this case because it did not involve circumstances where a presumption of incompetence arose. Instead, the Harris court's holding was based on the presumption of competence, which is not applicable in this case.[35] Thus, Harris does not control this case.

The State argues that the juvenile court correctly assigned the burden of proof to Tate because of the presumption of competence. The State explains that "[i]t is well settled that the law will presume sanity rather than insanity, competency rather than incompetency; it will presume that every man is sane and fully competent until satisfactory proof to the contrary is presented."[36]

---

[32] Harris, 114 Wn.2d at 422, 425.

[33] Id. at 426, 433, 442.

[34] Id. at 435.

[35] Id. at 432.

[36] Brief of Respondent at 7 (quoting Grannum v. Berard, 70 Wn.2d 304, 307, 422 P.2d 812 (1967)).

While this is a correct statement of law, there is also a presumption of incompetence when a court has previously determined that the accused was incompetent.[37] It is this latter presumption that controls this case, not the former.

The State cites State v. Eldridge,[38] State v. Blakely,[39] and State v. Anene[40] to support its assertion that the trial court did not err when it presumed Tate's competence and placed the burden on him to prove his incompetence. But the State's reliance on the presumption of competence is misplaced for the reasons we have already explained. In any event, the cases do not support the State's argument.

Two of the cases the State cites, Eldridge and Anene, did not involve circumstances where the presumption of incompetence would arise because there was no prior adjudication in either case.[41] And while Blakely discussed the presumption of incompetence, Blakely is distinguishable from this case.

In Blakely, Division Three recognized that "[a] rebuttable presumption of mental incompetency is raised by proof of a mental illness adjudication."[42] But

---

[37] See Coley, 171 Wn. App. at 187 (citing Platt, 143 Wn.2d at 251 n.4; In re Estate of Miller, 10 Wn.2d at 268; Criez, 123 Wash. at 606).

[38] 17 Wn. App. 270, 562 P.2d 276 (1977).

[39] 111 Wn. App. 851, 47 P.3d 149 (2002), rev'd on other grounds, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004).

[40] 149 Wn. App. 944, 205 P.3d 992 (2009).

[41] See Eldridge, 17 Wn. App. at 273; Anene, 149 Wn. App. at 948.

[42] 111 Wn. App. at 861.

10

the court concluded that the presumption of incompetence did not arise.[43] There, Blakely challenged the jury instructions given at his competency hearing that preceded his criminal trial.[44] Before these criminal proceedings, a court determined that Blakely was "not competent to understand the nature and complexity of the trust issues" in a separate civil proceeding.[45] But Division Three explained that the civil court's order "did not constitute an actual adjudication of mental illness."[46] Thus, it concluded that the order was "relevant evidence of Mr. Blakely's ability to understand the criminal proceedings and to assist in his defense, but it did not give rise to a presumption" of incompetence.[47]

Here, there was an actual adjudication that Tate was incompetent to stand trial in 2009. Thus, unlike Blakley, this prior adjudication gave rise to a presumption of incompetence. The State's reliance on these cases to demonstrate a presumption of competence in this case is not persuasive.

While we conclude that the State's arguments as to a presumption of competence are incorrect, we also do not agree with Tate's arguments. Tate argues that the State *always* has the burden of proving that a defendant is competent to stand trial. This argument is overly broad.

---

[43] Id. at 862.

[44] Id. at 861.

[45] Id. at 862.

[46] Id.

[47] Id.

Tate acknowledges that chapter 10.77 RCW "does not explicitly ascribe the burden of proof." But he argues that State v. Wicklund,[48] State v. Hurst,[49] and Born v. Thompson[50] make it clear that the State has the burden to prove that a defendant is competent. As the dissent in Coley explains, these cases do not contain controlling precedent, and they are distinguishable from this case.[51]

First, the supreme court in Wicklund only took note that the trial court placed the burden of proving Wicklund's competence on the State.[52] The court did not expressly hold that the burden of proof must be on the State.[53]

Second, Hurst and Born did not specifically address the issue raised in this case. Those cases focused on the commitment of criminal defendants for competency restoration, not whether the defendant was competent to stand trial.[54] Further, the issues were focused on the standard of proof, not the burden of the proof.[55]

---

[48] 96 Wn.2d 798, 638 P.2d 1241 (1982).

[49] 158 Wn. App. 803, 244 P.3d 954 (2010), aff'd, 173 Wn.2d 597, 269 P.3d 1023 (2012).

[50] 154 Wn.2d 749, 117 P.3d 1098 (2005).

[51] See 171 Wn. App. at 194-95 (Brown, J., dissenting).

[52] 96 Wn.2d at 799-800, 805.

[53] See id.

[54] Born, 154 Wn.2d at 751-54; Hurst, 158 Wn. App. at 805, 811.

[55] Id.

In sum, in contrast to the arguments made by both parties, which party has the burden of proof to demonstrate incompetence depends on the circumstances of each case. Here, the presumption of incompetence controls which party should have borne the burden of proof at Tate's competency hearing. It was the State's burden to rebut this presumption of incompetence.

### "Structural" Error

Tate next argues that imposing the burden of proof of incompetency on him violates due process and is a structural error that requires reversal of his adjudication and disposition. We choose not to decide this question based on the briefing that is currently before us.

"Structural error is a special category of constitutional error that 'affect[s] the framework within which the trial proceeds, rather than simply an error in the trial process itself.'"[56] If a structural error occurs in a criminal trial, the trial "'cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair.'"[57] A structural error "resists" a harmless error analysis because "it taints the entire proceeding."[58]

---

[56] State v. Wise, 176 Wn.2d 1, 13-14, 288 P.3d 1113 (2012) (alternation in original) (quoting Arizona v. Fulminante, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991)).

[57] Id. at 14 (quoting Fulminante, 499 U.S. at 310).

[58] State v. Levy, 156 Wn.2d 709, 725, 132 P.3d 1076 (2006).

In Coley, Division Three addressed whether the error in the allocation of the burden of proof was harmless after deciding that the trial court had erred.[59] The court then stated that the "State bears the burden of showing that any error is harmless beyond a reasonable doubt."[60] This is the constitutional harmless error standard. The court then stated that a "structural error is never harmless."[61]

Thereafter, the court discussed, at length, whether the error was structural.[62] Answering that question, the court concluded:

> [T]he trial court allocated the burden of proof to Mr. Coley, who, by RCW 10.77.084, was already legally incompetent. The court agreed that who carried the burden of proof might be different if Mr. Coley was incompetent. This was structural error and therefore not harmless.[63]

We agree, based on the majority's rationale in Coley, that there was an error in this case. But we are not persuaded that the error was structural, as that court decided. We say this for two reasons.

First, in Medina v. California, the United States Supreme Court held that states *may* place the burden to prove incompetence on a criminal defendant.[64] Specifically, the Court held that once a State provides a defendant access to procedures for making a competency evaluation, due process does *not* require

---

[59] 171 Wn. App. at 190-92.

[60] Id. at 190.

[61] Id.

[62] Id. at 190-92.

[63] Id. at 192.

[64] 505 U.S. 437, 449, 112 S. Ct. 2572, 120 L. Ed. 2d 353 (1992).

14

the State to assume the burden of proving that a defendant is competent to stand trial.[65] In our view, this holding undercuts the argument that misallocation of the burden of proof at an initial hearing on competency under the statute, by itself, is a violation of due process. This observation is subject to the condition that, as Medina states, the "State [has provided] a defendant access to procedures for making a competency evaluation."[66] Thus, if there is no constitutional error, it is difficult to see how such error is "structural."

Second, federal and state appellate courts that have considered what remedy is proper where competency has not been properly determined at the trial court level have remanded cases for "retrospective competency determinations" in appropriate circumstances.[67] If errors in properly assigning the burden of proof in an initial competency hearing are "structural errors," it follows that retrospective determinations of competency should never be allowed.

The parties to this case have not addressed the impact of Medina on the conclusion in Coley that the burden of proof error is structural. Likewise, they have not addressed why federal and state courts have permitted retrospective determinations of competency under these circumstances. Based on these unanswered questions and the briefing that is currently before us, we are not prepared to conclude that the error here was structural.

---

[65] Id.

[66] Id.

[67] See, e.g., People v. Lightsey, 54 Cal.4th 668, 706-07, 279 P.3d 1072 (2012); United States v. Renfroe, 825 F.2d 763, 767-68 (3d Cir. 1987); United States v. Johns, 728 F.2d 953, 957-58 (7th Cir. 1984)).

Moreover, the parties have not briefed whether the burden of proof error here is harmless, and, if so, which harmless error standard governs. In the absence of such briefing, we will not address whether the error is harmless under any of the potentially applicable standards.

Since we do not decide either whether the error here is structural or whether it is harmless, we proceed to the proper remedy on remand.

*Remedy*

The State argues that the proper remedy for the error is reversal of the competency determination and remand for a "retrospective competency determination." In the alternative to reversal for a structural error, Tate argues that we should remand and allow the juvenile court to first determine whether it can decide the issue retrospectively. We agree with Tate's alternative argument.

In Nissen v. Obde, our supreme court held that the proper remedy when a trial court placed the burden of proof on the wrong party was to remand the case back to the trial court.[68] There, the supreme court explained that it was "confronted with the question of whether to review the record to determine whether these findings are sustainable under a correct application of the burden of proof rule, or to remand the case to the trial court for reconsideration of the findings."[69] The court reasoned that remanding the case to the trial court was the proper remedy because "it is the function of the trial court and not of [the

---

[68] 55 Wn.2d 527, 529-30, 348 P.2d 421 (1960); see also Coley, 171 Wn. App. at 191 (citing Nissen v. Obde in its harmless error analysis).

[69] Nissen, 55 Wn.2d at 529.

supreme] court to consider the credibility of witnesses and to weigh the evidence in order to determine whether it preponderates in favor of the party having the burden of proof."[70]

Washington courts have also explained that remand was the proper remedy when a trial court should have had a competency hearing but did not.[71] In State v. Wright, the court recognized that "a belated determination of the defendant's sanity at the time he pleaded [could] be fruitless."[72] But the court concluded that a "belated" competency determination would be fruitful in that case because there was a "substantial body of psychiatric data obtained at the time Mr. Wright was sentenced."[73]

As the State points out, federal courts have remanded for a similar "retrospective competency determination" when district courts failed to hold a competency hearing when it was required.[74] But the Third and Seventh Circuit articulated an additional preliminary step in making this determination.[75] These courts explained that before a trial court engages in a "retrospective competency

---

[70] Id. at 529-30.

[71] See State v. Wright, 19 Wn. App. 381, 391, 575 P.2d 740 (1978); Young v. Smith, 8 Wn. App. 276, 278, 505 P.2d 824 (1973).

[72] 19 Wn. App. 381, 390, 575 P.2d 740 (1978) (citing Drope, 420 U.S. at 183; Pate, 383 U.S. 375; Evans v. State, 261 Ind. 148, 300 N.E.2d 882 (1973)).

[73] Id. at 391.

[74] Brief of Respondent at 14 (citing Renfroe, 825 F.2d at 767; Johns, 728 F.2d at 957-58).

[75] Renfroe, 825 F.2d at 767; Johns, 728 F.2d at 958.

17

determination,"[76] it must first decide "whether a meaningful hearing on the defendant's competency at the prior proceedings is still possible."[77] As the Third Circuit explained, the trial court "is in the best position to determine whether it can make a retrospective determination."[78]

The California Supreme Court came to a similar conclusion. In People v. Lightsey, the supreme court held that allowing a defendant to represent himself at mental competency proceedings was improper.[79] The court concluded that the proper remedy in that case was "ordering a limited reversal and remand for the trial court to determine whether a retrospective competency hearing is feasible and, if so, to conduct such a hearing is both appropriate and permissible."[80]

"'Feasibility in this context means the availability of sufficient evidence to reliably determine the defendant's mental competence when tried earlier.'"[81] The supreme court explained that a trial court should consider the following factors when determining whether a retrospective competency determination is feasible:

> "(1) [t]he passage of time, (2) the availability of contemporaneous medical evidence, including medical records and prior competency

---

[76] Renfroe, 825 F.2d at 767.

[77] Johns, 728 F.2d at 958.

[78] Renfroe, 825 F.2d at 767.

[79] 54 Cal.4th 668, 698, 279 P.3d 1072 (2012).

[80] Id. at 706.

[81] Id. at 710 (quoting People v. Ary, 51 Cal.4th 510, 520, 246 P.3d 322 (2011)).

determinations, (3) any statements by the defendant in the trial record, and (4) the availability of individuals and trial witnesses, both experts and non-experts, who were in a position to interact with [the] defendant before and during trial."[82]

The court further held that "[b]ecause of the inherent difficulties in attempting to look back to the defendant's past mental state, the burden of persuasion will be on the People to convince the trial court by a preponderance of the evidence that a retrospective competency hearing is feasible in this case."[83]

We hold that the proper remedy in this case is to remand this case with directions that the juvenile court first determine whether a retrospective competency determination is feasible.

If the juvenile court concludes that a retrospective competency determination is not feasible, Tate's conviction must be vacated and a new trial may be granted when he is competent to stand trial.[84]

But if the juvenile court concludes that this determination is feasible, the court must then determine whether the State rebutted the presumption of Tate's incompetency to stand trial.

If the juvenile court determines that the State has rebutted the presumption that Tate is incompetent to stand trial, the adjudication and

---

[82] Id. (alterations in original) (quoting Ary, 51 Cal.4th at 520 n.3).

[83] Id. at 710-11 (citation omitted).

[84] See Renfroe, 825 F.2d at 767-68; Johns, 728 F.2d at 958.

disposition are affirmed.[85] But if the court determines that the State did not rebut this presumption, the adjudication and disposition are reversed.[86]

## STATEMENT OF ADDITIONAL GROUNDS

Tate argues in his statement of additional grounds that he was not competent to stand trial. We need not discuss this claim further in view of our remand to the trial court with instructions.

We reverse and remand with instructions.

_Cox, J._

WE CONCUR:

_Jau, J._                                    _Dwyer, J._

---

[85] See Johns, 728 F.2d at 958.

[86] See Wright, 19 Wn. App. at 391.