Filed 8/27/24  P. v. Scheetz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G063588 |
| v. | (Super. Ct. No. FVI21000983) |
| CHRISTOPHER ALEXANDER SCHEETZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Shannon Faherty, Judge. Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Melissa Mandel and Anne Spitzberg, Deputy Attorneys General, for Plaintiff and Respondent.

After a jury found Christopher Alexander Scheetz guilty of multiple sex crimes, he was sentenced to an aggregate term of 63 years to life. Scheetz appeals from the trial court's denial of his counsel's request to suspend proceedings and hold a second competency hearing. We conclude he failed to present new evidence or a substantial change in circumstances casting a serious doubt on the validity of the jury's previous finding that he was competent. Accordingly, we affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On April 5, 2021, the San Bernardino County District Attorney filed a felony complaint charging Scheetz with two counts of committing a lewd act upon a child under age 14.

On June 7, 2021, during pretrial proceedings, Scheetz's counsel declared a doubt as to Scheetz's competency to stand trial pursuant to Penal Code section 1368[1], and the trial court suspended criminal proceedings. On August 5, 2022, a jury found Scheetz competent to stand trial.

On August 17, 2022 the district attorney filed an information charging appellant with sexual intercourse or sodomy with a child 10 years old or younger (count 1, § 288.7(a)), oral copulation with a child 10 years old or younger (count 2, § 288.7(b)), sexual penetration with a child 10 years old or younger (count 3, § 288.7(b)), and lewd act upon a child under age 14 (count 4, § 288(a)).

On September 15, 2022, defense counsel declared a doubt about Scheetz's competence to stand trial, and stated Scheetz would refuse further evaluations. Counsel did not request another competency hearing, and provided no evidence casting doubt on the prior competency finding.

---

[1] All further statutory refences are to the Penal Code.

On January 31, 2023, defense counsel again declared a doubt about appellant's competence to stand trial and formally asked the court to conduct a second competency hearing. Counsel argued Scheetz's current communications with the court and a handwritten letter casted doubt on the prior finding of competency.

Counsel noted that at the competency trial, a doctor had testified about the handwritten letter. The doctor testified that during his evaluation of Scheetz, Scheetz showed him a document. The doctor stated: "[I] observed a handwritten -- I don't know what to call it – it's like a manifesto almost that he prepared for counsel. And it was -- it looked psychotic to me. Frequently when people are psychotic, they write in a very pinched, cramped manner. And his language was very inappropriate for what he was asking for. The words were insubstantial and didn't seem to have any meeting." The doctor opined the document did not "make any sense at all." "The words that were used were designed, it seemed, to impress the reader with his extensive vocabulary but it didn't seem to be in any way grounded in reality . . . ." It was "similar to the way [Scheetz] would talk when [the doctor had] conversations with him . . . ."

Defense counsel further noted the jury had requested to see the "manifesto," but it was never shown to the jury because it was never introduced into evidence. At the time of the competency trial, counsel explained why the document was never introduced into evidence. He stated: "[E]ven though I'd had my client say he didn't have any issue with it being introduced regarding attorney-client privilege, since it is my position he is not competent now, I don't think he is probably in a position to waive those kinds of issues. So I didn't feel that it would probably be appropriate for me to introduce the document into evidence, and then have to turn it over to the

[district attorney] and things of that nature because of that. So that's why I ultimately made the decision not to introduce it even though it was inadvertently referenced to because [the testifying doctor] had actually seen it before."

Scheetz, however, testified at the hearing that the handwritten letter submitted with the request for a second competency hearing was different from the manifesto. The manifesto was about "a sense of culture shock" and "the audacity and the persecution." The handwritten letter is a "legalese written profile . . . about my personal standing on how . . . to look outside of myself in on [sic] a type of cultural jailhouse inmate population." In response to the court's query, Scheetz stated he wrote the letter near the beginning of the case.

The trial court denied the request to suspend proceedings. It found that Scheetz's "communication style" was "odd," but did not "rise to the level of incompetence." As to the letter, the court stated: "I don't think that a letter that was written near the beginning of the case is a substantial change in circumstance."

On February 16, 2023, a jury found Scheetz guilty as charged. He was sentenced to a determinate term of 8 years, followed by an indeterminate term of 55 years to life.

DISCUSSION

I.

COMPETENCY HEARINGS

"The due process clause of the federal Constitution's Fourteenth Amendment prohibits trying a criminal defendant who is mentally incompetent. [Citation.] A defendant is deemed competent to stand trial only if he "'has sufficient present ability to consult with his lawyer with a

4

reasonable degree of rational understanding'" and "'has a rational as well as factual understanding of the proceedings against him.'"'" (*People v. Ary* (2011) 51 Cal.4th 510, 517 (*Ary*), quoting *Dusky v. United States* (1960) 362 U.S. 402, 402.) "When a trial court is presented with evidence that raises a reasonable doubt about a defendant's mental competence to stand trial, federal due process principles require that trial proceedings be suspended and a hearing be held to determine the defendant's competence. [Citations.] Only upon a determination that the defendant is mentally competent may the matter proceed to trial. [Citation.]" (*Ary*, at p. 517.)

"California law reflects those constitutional requirements. Section 1368, in subdivision (a), requires a trial court to suspend criminal proceedings at any time 'prior to judgment' if the court reasonably doubts 'the mental competence of the defendant.' A defendant can create reasonable doubt through substantial evidence of mental incompetence, or the trial court can raise the issue on its own." (*Ary*, *supra*, 51 Cal.4th at p. 517.) "'[M]ore is required to raise a doubt than mere bizarre actions [citation] or bizarre statements [citation] or statements of defense counsel that defendant is incapable of cooperating in his defense [citation] or psychiatric testimony that defendant is immature, dangerous, psychopathic, or homicidal or such diagnosis with little reference to defendant's ability to assist in his own defense [citation].' [Citation.]" (*People v. Ghobrial* (2018) 5 Cal.5th 250, 270.)

If a defendant has been found competent to stand trial, "a trial court need not suspend proceedings to conduct a second competency hearing unless 'it is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding. [Citations.]" (*People v. Jones* (1991) 53 Cal.3d 1115, 1153 (*Jones*).) A substantial change of circumstances or new evidence casts a serious doubt on the validity of the

5

prior finding if it "ma[kes] it unreasonable [for the trial court] to continue to rely on the prior competence finding." (*People v. Rodas* (2018) 6 Cal.5th 219, 235 (*Rodas*).) However, "the duty to suspend is not triggered by information that substantially duplicates evidence already considered at an earlier, formal inquiry into the defendant's competence; when faced with evidence of relatively minor changes in the defendant's mental state, the court may rely on a prior competency finding rather than convening a new hearing to cover largely the same ground." (*Id*. pp. 234-235.) "If in the course of [criminal] proceedings the trial court learns of new facts and circumstances inconsistent with the predicate assumptions, it has a duty to declare a doubt regarding the defendant's current competence and conduct a hearing on the subject." (*People v. Tejeda* (2019) 40 Cal.App.5th 785, 792.)

A reviewing court applies "a deferential standard of review to a trial court's ruling concerning whether another competency hearing must be held." (*People v. Huggins* (2006) 38 Cal.4th 175, 220.) "We review for substantial evidence the trial court's finding of no substantial change of circumstances or no new evidence casting serious doubt on the initial competency determination." (*People v. Easter* (2019) 34 Cal.App.5th 226, 243 (*Easter*).)

II.

THE TRIAL COURT PROPERLY DENIED THE REQUEST FOR A SECOND COMPETENCY HEARING

Because a jury previously found Scheetz was competent to stand trial, he must present new evidence or a substantial change in circumstances casting doubt on that prior finding before the trial court is required to suspend proceedings. Scheetz's request to suspend proceedings is based on:

6

(1) his current communications with the court and counsel; and (2) a handwritten letter.

As to the handwritten letter, it is unclear whether this letter is the same as the manifesto, which the jury heard about before making its determination. To the extent the handwritten letter or its content would be "new" to a factfinder, Scheetz does not explain how the letter casts doubt on the prior competency finding. He acknowledges that, during the prior competency trial, the jury heard expert testimony that the same or similar document was evidence of psychosis. His argument on appeal is that seeing the contents of the letter would be more impactful than hearing a brief summary of the contents. While that may be true, it does not warrant suspension of proceedings for a second competency hearing because the letter and its contents constitute additional evidence of the same type of arguably irrational behavior a jury had previously considered before making its finding of competency. As the high court stated, "the duty to suspend is not triggered by information that substantially duplicates evidence already considered at an earlier, formal inquiry into the defendant's competence." (*Rodas*, *supra*, 6 Cal.5th at p. 234; see, e.g., *People v. Mendoza* (2016) 62 Cal.4th 856, 892 [a doctor's report that reiterates symptoms considered in a previous competency hearing did not tend to undermine the jury's prior finding]; *People v. Lawley* (2002) 27 Cal.4th 102, 136-139 [no error in failing to conduct a second competency hearing where proffered evidence affirmed "the same arguably delusional beliefs reported" by experts in their previous competency evaluations].)

As to Scheetz's communications with the court and counsel, the trial court determined that, although Scheetz's communications style was odd, it did not demonstrate incompetence. This determination was based on

the trial court's observations, which the court may rely on to make its determination. (See *Jones, supra,* 53 Cal.3d at p. 1153 ["[T]he trial court may appropriately take its personal observations into account in determining whether there has been some significant change in the defendant's mental state"].) Moreover, the hearing transcripts show Scheetz understood the court's questions and provided responsive answers, albeit not in the most concise manner. For example, when asked when the letter was written, Scheetz answered it was "well before . . . we even put preliminary findings on the record." He also was cognizant when he was babbling and apologized.

Finally, for the same reasons stated above, the duty to suspend proceedings a second time was not triggered because the concerns over Scheetz's communications were considered by the jury in the first competency hearing. As an example, in the competency trial, a testifying doctor explained the language used in the manifesto, which seemed designed to impress with extensive vocabulary but made no sense, was similar to how Scheetz communicated with the doctor. The written request for suspending proceedings asserted that "Mr. Scheetz['s] behavior and bizarre communication has not changed" since the first competency trial. The case thus is distinguishable from *Easter, supra,* 34 Cal.App.5th 226, where the defendant's communications deteriorated over time. (See *id.* at p. 243 [noting "defendant's recent communications consist[ing] of jumbled words and fanciful response . . . was different than anything described by [two experts] and was not presented to the jury [in the prior competency hearing]"].) In sum, the trial court did not err in denying the request to suspend proceedings and conduct a second competency hearing.

Our conclusion that the trial court did not err in refusing to suspend criminal proceedings also disposes of Scheetz's related due process

8

claim. As he correctly notes, the due process clause of the federal Constitution requires a hearing on competence to be held when a defendant has come forward with substantial evidence of incompetence. (See, e.g., *Ary*, 51 Cal.4th at p. 517 ["When a trial court is presented with evidence that raises a reasonable doubt about a defendant's mental competence to stand trial, federal due process principles require that trial proceedings be suspended and a hearing be held to determine the defendant's competence"].) However, as discussed, Scheetz failed to present substantial evidence casting doubt on the prior competency finding. Accordingly, he was not denied his due process right to a competency hearing.

DISPOSITION

The judgment is affirmed.


DELANEY, J.


WE CONCUR:


MOTOIKE, ACTING P.J.


GOODING, J.

9